# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK NORTHWEST, N.A., in its capacity as Class A Pass Through Trustee,<br><br>Appellant,<br><br>v.<br><br>UAL CORPORATION,<br><br>Appellee. | Case No. 05 C 5298<br><br>Honorable John W. Darrah |

## MEMORANDUM OPINION AND ORDER

United Airlines and certain of its affiliates (collectively, "United") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code. This appeal arises from the August 18, 2005 entry by the bankruptcy court of a Second Amended Order Authorizing the Thirteenth Amendment to the Club DIP Facility in connection with the Proposed Refinancing of the Purchase of the Class A certificates of the 1997-1 EETC Transaction.

## LEGAL STANDARD

On an appeal, a bankruptcy court's factual findings, such as the credibility of witnesses, and applications of legal standards to a particular set of facts are reviewed for clear error; while questions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013; *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003); *McFarlane v. Life Ins. Co. of Am.*, 999 F.2d 266, 267 (7th Cir. 1993). "A finding is clearly erroneous when although there is enough evidence to support it, the reviewing court [based] on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . If the bankruptcy court's account of the evidence is plausible, a reviewing court may not reverse even if it would have weighed the evidence differently as trier of

fact." *Key Plaza I, Inc. v. Kmart Corp.*, No. 02 C 4086, 2003 WL 115240, at * 3 (N.D. Ill. Jan. 13, 2003) (citation omitted).

## BACKGROUND

In December of 1997, United financed fourteen of its owned and leased aircraft in a complex financing transaction known as the 1997-1 EETC Transaction. The transaction was a structured finance agreement that worked as follows: Trusts were established. Each trust issued trust certificates, which were purchased by investors. Proceeds from the trust certifications were used by each trust to purchase equipment notes, issued under the terms of an Indenture between United and First Security Bank National Association as Trustee. These equipment notes were issued "tranches," which is to say that they were issued in classes of securities, with the more senior tranches having a first claim on the collateral and enjoying enhanced over-collateralization. See e.g., 121 Banking L.J. 108 (2004). The Class A Equipment Notes were issued to the Class A Pass Through Trust; Class B Equipment Notes were issued to the Class B Trust and so on. Each series of equipment notes is secured by an individual aircraft.

The appellant, Wells Fargo Bank Northwest N.A., brings this appeal as the Class A Pass Through Trustee. The Class A Trust purchased fourteen equipment notes; one Class A Equipment Note for each aircraft. The appellee, United, was the owner of the Class D Certificates issued under the Pass Through Trust Agreement and the purchaser of the Class C and Class B certificates in the open market. The Pass Through Trust Agreement contains a right of subordinate certificates to purchase all, but not less than all, of the senior certificates upon a triggering event, as defined in the agreement.

Contending it had the right to exercise this right, United gave notice to the Trustee of its intention to purchase the Class A Certificates. On July 27, 2005, the bankruptcy court approved United's purchase. Now that United has purchased the junior tranches, the structure of the transaction and its contractual documents renders United's purchase of the Class A Certificates a mechanical, non-discretionary process that is deemed to occur on the date United pays the purchase price.[1]

United intended to fund the purchase of the Class A Certificates with its own funds. However, to preserve its own liquidity, United wanted, *after* consummation of its purchase of the Class A Certificates, to refinance its cash purchase with a loan. This is to say that United wanted debtor-in-possession financing, which would consist of adding a "Tranche C" to United's existing loans. Given that the fourteen aircraft are the primary source of security for the Tranche C Loan, the loan terms provide that the Tranche C Lender will not actually fund the Tranche C Loan unless and until the aircraft are free and clear of all liens, and first priority liens in favor of the Tranche C Lender can be granted.

This creates what United rightly described as a "chicken-or-egg" problem. United will not have the authority to instruct the trustee of the transaction to release the current liens on the aircraft unless and until United actually owns the Class A Certificates and becomes the controlling party in the 1997-1 EETC Transaction. As a result, United has no choice but to use its own cash to initially fund the purchase of the Class A Certificates, since the Tranche C Loan cannot be made until United possesses the authority to have the current liens released.

---

[1] The method of calculating the purchase price, both in terms of the interest rate used in the calculation as well as the methodology employed in making the calculation, is the subject of an adversary proceeding currently pending in the bankruptcy court.

3

To this end, United sought an order amending its debtor-in-possession financing. Wells Fargo took the position that United's proposed order did not adequately protect its interests. Specifically, Wells Fargo was concerned that United's proposed order "could be read to suggest that the planes are being conveyed free and clear as of the date of this order." Therefore, to resolve Wells Fargo's concerns, language was agreed upon for an agreed amended order. Specifically, Paragraph 9, which was added in its entirety as a result of the concerns of Wells Fargo, reads as follows:

> Notwithstanding any provision of this Order to the contrary, nothing contained herein shall be deemed to permit the releasing of existing liens and encumbrances with respect to the Encumbered Aircraft or the granting of any liens in favor of any agent or lenders under the Club DIP Facility until all amounts due under applicable law have been determined by final order of a court with jurisdiction over the matter and irrevocably paid to Wells Fargo Bank Northwest N.A., as Class A Pass Through Trustee on behalf of the current holders of the Class A Certificates.

The single point of disagreement between the parties was whether the word "nonappealable" should be included after the word "final" in the fifth line. This disagreement was brought before the bankruptcy court. The bankruptcy court said:

> No, I think the word "nonappealable" ought not to be there because there is always the possibility of an appeal going forward without a stay. If the order is appealed and there is a stay, well, then of course it won't go into effect. But the question would be whether a stay is in effect, not whether the order is appealable.

The bankruptcy court then entered the Second Amended Order Authorizing the Thirteenth Amendment to the Club DIP Facility in connection with the Proposed Refinancing of the Purchase of the Class A certificates of the 1997-1 EETC Transaction, without the word "nonappealable" as requested by the appellant.

## ANALYSIS

The sole issue raised in this appeal is whether the bankruptcy judge erred in failing to include the word "nonappealable" in the Second Amended Order. Wells Fargo asserts that the bankruptcy court's failure to condition the granting of the lien on true finality is flawed in that it potentially prematurely strips it of its lien rights. While Wells Fargo admits that it may seek a stay pending appeal (thus obviating the potential harm), it argues that this protection is insufficient because there is no guarantee that a stay would be granted and that Wells Fargo could be harmed even if a stay were granted because it could be required to post a bond.

As United rightly notes, there are several possible outcomes, but only two possible outcomes in which Wells Fargo's fears could be realized. The following outcomes would *not* trigger Wells Fargo's concerns, either because they would not give United any right to encumber the aircraft, or because the ultimate order would be in United's favor, rendering Wells Fargo's concerns moot:

- The "final order" is adverse to United – United would have no right to encumber; or,

- The "final order" is adverse to Wells Fargo; Wells Fargo seeks and is granted a stay pending appeal – United would have no right to encumber; or,

- The ultimate order entered by an appellate court is in United's favor -- Wells Fargo's objections will have been overruled and are therefore moot.

The outcomes in which Wells Fargo's concerns could possibly arise are:

- Wells Fargo does not seek a stay pending appeal of an adverse final order by the bankruptcy court, or

5

– Wells Fargo seeks a stay pending appeal from the bankruptcy court that is denied, seeks a stay pending appeal from the district court that is denied, and seeks a writ of mandamus from the Seventh Circuit that is denied.

The bankruptcy court is not required to save Wells Fargo from its own failure to seek a stay. In such an instance, Wells Fargo may be required to post a bond. However, this is always the case. Wells Fargo would not be uniquely harmed if it were required to post a bond. Further, Wells Fargo can seek waiver of the bond posting, if appropriate. *Dillon v. City of Chicago*, 866 F.2d 903, 904-05 (7th Cir. 1988).

As a result, the sole question is whether the failure to condition the final order as nonappealable was incorrect as a matter of law, where a stay pending appeal from the bankruptcy court and the district court could be denied and where a writ of mandamus from the Seventh Circuit could be denied. Wells Fargo presents no law supporting its position that the Bankruptcy Code provides another remedy to Wells Fargo. Instead, Wells Fargo analogizes to Section 364(d) of the Bankruptcy Code, which provides that the bankruptcy court may authorize post-petition financing supported by a superpriority lien only if "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d). Although Wells Fargo admits that the transaction is different from those in Section 364(d), it argues that the present situation is even more tenuous than the one anticipated in Section 364(d) in that it argues that it stands to lose its lien in its entirety.

The Court agrees with United that Wells Fargo must address this complaint to Congress, rather than this Court. The Bankruptcy Code and Rules do not mandate that bankruptcy courts

6

insert the word "nonappealable" to protect appellants' rights, nor do the Code or Rules provide the additional protection of Section 364(d) in the present situation. What Bankruptcy Rule 8005 does include is the right to apply to the bankruptcy court for a stay pending appeal of an adverse ruling, protecting the appellant's rights by postponing any adverse effects of such a ruling. Further, Section 364(e) reads:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). The Section 364(e) seeks to "overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge. The proper recourse for the objecting creditor is to get the transaction stayed pending appeal." *Matter of EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982). While not unsympathetic to the bind in which Wells Fargo finds itself, this Court will not traipse on the policy decisions of Congress by adding protection for Wells Fargo that is not supported by the Bankruptcy Code or Rules.

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is affirmed.

Date: January 18, 2006

JOHN W. DARRAH
United States District Court Judge